# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF PUERTO RICO

**JOSE BLANCO TORRES,**

**Plaintiff**

**v.**

**JUNTO DE GOBIERNO DE SERVICIO DE EMERGENCIA, et al.,**

**Defendants.**

CIVIL NO. 14-1622 (GAG)

## OPINION AND ORDER

José Blanco Torres, Plaintiff in this matter, brought this action against Junta de Gobierno del Servicio de Emergencia 9-1-1 ("the Board") and Director Roberto Fuentes-Maldonado ("Fuentes") in his official and individual capacity (collectively referred to as "Defendants"), alleging that he was discriminated against on the basis of his disability and age in violation of Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101 *et seq.*; the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621 *et seq.*; the Fourteenth Amendment to the United States constitution, pursuant to § 1983 of the Civil Rights Act of 1991; Puerto Rico Law No. 44 of July 2, 1985, P.R. LAWS ANN. tit. 1 §§ 501 *et seq.* ("Law 44"); and No. 100 of June 1959, P.R. LAWS ANN. tit. 29 §§ 146 *et seq.*  (Docket No. 1 and 26.)  Plaintiff essentially claims that Defendants unlawfully and unconstitutionally discriminated against him by terminating his employment due to his disability stemming from his Parkinson's disease.  (Docket No. 26.)

Presently before the court is Defendants' motion to dismiss Plaintiff's amended complaint pursuant to Federal Rules of Civil Procedure 12(b)(5) and (6).  (Docket No. 31.)  In sum, Defendants argue that the amended complaint should be dismissed because the process served

Civil No. 14-1622 (GAG)

upon the Board and Fuentes was insufficient and the complaint fails to state a claim upon which relief can be granted.  (Id. at 5-27.)  Plaintiff opposed Defendants' motion.  (Docket No. 41.)

After reviewing the pleadings and pertinent law, the court **GRANTS in part** and **DENIES in part** Defendants' motion to dismiss at Docket No. 31.

I.     **Relevant Factual and Procedural Background**

In 2005, Plaintiff began to slowly develop Parkinson's disease, which is a progressive, degenerative disease of the nervous system that affects both motor and non-motor functions. (Docket No. 26 ¶¶ 25-26.)  Plaintiff worked as an attorney for the Board from January, 2009 until his termination in March, 2013.  (Id. ¶¶ 12-13, 22-24.)  He was hired as a contract attorney and later became in-house counsel.  (Id. ¶¶ 12-13.)  In March, 2012, Plaintiff underwent a surgical procedure known as "Deep Brain Stimulation" to attenuate his Parkinson's disease symptoms.  (Id. ¶ 15.)  Almost everyone in his office was aware of his disease and this procedure.  (Id. ¶ 16.) Upon returning to work, Plaintiff was given reasonable accommodation for his disability by then Executive Director of the Board, Manuel González.  (Id. ¶ 17.)  Thereafter, as a result of Puerto Rico's November, 2012 general elections, a new administration came to power, which resulted in new members to the Board's staff, including Executive Director Fuentes.  (Id. ¶ 18-21.)  On or about February 25, 2013, Plaintiff met with A. Vera ("Vera"), a member of the Elections Transition Committee and newly appointed Human Resources Director whose full name is unknown to him.  (Id. ¶ 21.)  In this meeting, Plaintiff informed Vera that he was an impaired person aggrieved with Parkinson's disease and that he had gone through a special surgical procedure to mitigate his impairment.  (Id.)  Plaintiff also informed Vera that despite his disease,

Civil No. 14-1622 (GAG)

with some reasonable accommodations, he could perform all of the essential duties of his current position.  (Id. ¶ 23.)

On that same date, Vera attended a meeting in which he expressed that he "was worried about [Plaintiff's] Parkinson's disease health condition."  (Id.)  Thereafter, Plaintiff wrote a letter to Fuentes, requesting a meeting with him.  (Id. ¶ 24.)  Said letter was never answered and the Board never attempted to engage in the process of establishing reasonable accommodation to allow Plaintiff to perform his essential and official duties with the Board.  (Id.)  On March 1, 2013, Plaintiff was terminated from his position with the Board.  (Id.)

Plaintiff filed this suit, alleging that he was wrongfully terminated because of his disability on March 1, 2013.  (Docket No. 26 ¶¶ 22-24.)  That same day, Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC").  (Id. ¶¶ 9, 33.)  Thereafter, on August 28, 2014, Plaintiff received the Notice of the Right to Sue by the EEOC and United States Department of Justice.  (Id. ¶ 36.)  On December 8, 2014, Plaintiff amended his complaint, which added his claim under Laws 44 and 100.

## II.    Motion to Dismiss under Rule 12(b)(5)

The court will address, as a threshold matter, whether the Board and Fuentes were properly served and, therefore, whether the court has personal jurisdiction over Defendants. According to the Proof of Service, Plaintiff attempted to effect service on Defendants by leaving a copy of the summons with Fuentes's secretary, Norma Rivera ("Rivera").  (Docket Nos. 18 at 2; 18-1 at 2; 18-2 at 2; 18-3 at 2.)  Defendants now challenge this service by moving to dismiss the amended complaint under Fed. R. Civ. P. 12(b)(5) of the Federal Rules of Civil Procedure and including sworn statements by Fuentes and Rivera, indicating that Fuentes never authorized or appointed

3

Civil No. 14-1622 (GAG)

Rivera to receive service on his behalf in his official or individual capacity.  (Docket Nos. 31-1 and 31-2.)  Defendants further note that Plaintiff failed to include a copy of the complaint with the summons.  (Docket No. 31 at 6.)  Plaintiff responds by first arguing that because Rivera was a secretary of the Board and Fuentes, it logically follows that she had the authority to receive summons on behalf of the Board and Fuente.  (Docket No. 41 at 3-5.)  Nevertheless, as an alternative argument, Plaintiff avers that to the extent that service of process was defective, the appropriate remedy is to quash service and allow Plaintiff to cure its defects because it is clear that the purpose of giving Defendants notice was attained.  (Id. at 5.)

Fed. R. Civ. P.  4(m) provides that service of process must be made "within 120 days after the complaint is filed."  FED. R. CIV. P. 4(m).  Service of process may be made upon the individual being sued, by leaving a copy of the summons and complaint at the individual's "usual place of abode with someone of suitable age and discretion who resides there," by delivering a copy to the individual's agent, or in accordance with the laws of Puerto Rico.  FED. R. CIV. P. 4(e).  It is well established that in Puerto Rico "individuals may not be served by merely leaving the complaint and summons at their place of business, unless an agent receives the documents."  Figueras v. Autoridad de Energia Electrica, 553 F. Supp. 2d 43, 44 (D.P.R. 2007).  The courts have recognized that for a person to be an agent capable of receiving process for another, he or she must be authorized as such.  See Miranda v. IPR Pharm., No. 10-2238, 2011 WL 5977813, at *6 (D.P.R. Nov. 29, 2011); Rivera v. Bank One, 145 F.R.D. 614, 626 (D.P.R. 1993).  Further, because service of process is a constitutional imperative of due process of law, the Puerto Rico Supreme Court has demanded strict compliance when its requirements are involved.  See Quinones Roman v. CIA ABC, 152 P.R. Dec. 367, P.R. Offic. Trans. (2000).

4

Civil No. 14-1622 (GAG)

Pursuant to Fed. R. Civ. P. 12(b)(5), a defendant may move for dismissal of a cause of action for failure to comply with said rules by contesting the manner in which service of process was performed.  Ramirez De Arellano v. Colloides Naturels Int'l, 236 F.R.D. 83, 85 (D.P.R. 2006).  However, Dismissal for failure to meet the service requirements of Fed. R. Civ. P. 4(e) is disfavored where "there is a reasonably conceivable means through which service may be obtained."  Id. at 85 n.4 ("if the first service is ineffective, and the defects are curable, the [c]ourt should treat a motion to dismiss as a motion to quash service of process in the alternative and retain the case pending effective service").

The resolution of this issue is simple.  An examination of the specific facts articulated by Defendants, along with the pertinent law and Plaintiff's own concession, leads this court to find that Plaintiff's service of process was insufficient because Rivera was not authorized or appointed by Fuentes to receive service on his behalf in his official or individual capacity.  When faced with this determination, the court has broad discretion to dismiss the action or retain the case and quash service of process.  Ramirez De Arellano, 236 F.R.D. at 86; see also 5 C. Wright & A. Miller, Federal Practice and Procedure § 1354 (2004).  Because the initial defects in Plaintiff's service of process are easily curable and this was Plaintiff's first attempt to serve Defendants, this court hereby quashes service of process and orders Plaintiff to properly serve Defendants by **March 24, 2015**.  To decide otherwise would be a waste of the court's and the parties' times and resources.

Accordingly, the court **DENIES** Defendants' motion to dismiss this case due to Plaintiff's insufficient service of process and orders Plaintiff to re-serve Defendants promptly.

5

Civil No. 14-1622 (GAG)

### III.     Motion to Dismiss under Rule 12(b)(6)

With respect to their 12(b)(6) motion, Defendants argue: (1) that the Eleventh Amendment to the United States Constitution bars Plaintiff's ADA claim against the Board and Fuentes in his official capacity; (2) there is no individual liability under Title I of the ADA and thus Plaintiff's claim against Fuentes in his individual capacity fails; (3) Plaintiff's complaint fails to sufficiently state an ADEA claim upon which relief can be granted against the Board and Fuentes in his official and individual capacity; (4) Plaintiff's civil rights claim under 42 U.S.C. § 1983 and supplemental state law claim are time-barred; (5) the Eleventh Amendment also bars Plaintiff's supplemental state law claim; and (6) even though Plaintiff marked retaliation as an additional ground of discrimination in his EEOC Charge of Discrimination, he did not allege such in either his initial or amended complaint.  (Docket No. 31 at 7-27.)

Plaintiff responds by conceding the following: (1) there is no cognizable legal claim for individual liability under Title I of the ADA; (2) no sufficient facts are alleged to support a retaliation claim under the ADA; (3) no sufficient facts are alleged to support a cause of action under the ADEA; (4) his civil rights claim under 42 U.S.C. § 1983 may be time-barred; and (5) his supplemental state law claim may be barred by the Eleventh Amendment, but is not time-barred. (Docket No. 41 at 2-3.)  As such, Plaintiff voluntarily seeks to dismiss those claims and asks this court that such dismissals be without prejudice.  (Id. at 2-3, 7-8.)  Lastly, Plaintiff contends that he specifically references the language of Title II of the ADA, which prohibits discrimination against people with disabilities by public entities, and thus his claim against the Board and Fuentes in his official capacity is properly brought under Title II of the ADA.  (Id. at 6-7.)

Civil No. 14-1622 (GAG)

A.   Standard of Review

When considering a motion to dismiss for failure to state a claim upon which relief can be granted, see FED. R. CIV. P. 12(b)(6), the court analyzes the complaint in a two-step process under the current context-based "plausibility" standard established by the Supreme Court.  See Schatz v. Republican State Leadership Comm., 669 F.3d 50, 55 (1st Cir. 2012) (citing Ocasio-Hernández v. Fortuño-Burset, 640 F.3d 1, 12 (1st Cir. 2011) which discusses Ashcroft v. Iqbal, 556 U.S. 662 (2009) and Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007)).  First, the court must "isolate and ignore statements in the complaint that simply offer legal labels and conclusions or merely rehash cause-of-action elements."  Id.  A complaint does not need detailed factual allegations, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  Iqbal, 556 U.S. at 678-79.  Second, the court must then "take the complaint's well-pled (i.e., non-conclusory, non-speculative) facts as true, drawing all reasonable inferences in the pleader's favor, and see if they plausibly narrate a claim for relief."  Schatz, 669 F.3d at 55.  Plausible, means something more than merely possible, and gauging a pleaded situation's plausibility is a context-specific job that compels the court to draw on its judicial experience and common sense.  Id. (citing Iqbal, 556 U.S. at 678-79).  This "simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of" the necessary element.  Twombly, 550 U.S. at 556.

"[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief.'"  Iqbal, 556 U.S. at 679 (quoting FED. R. CIV. P. 8(a)(2)).  If, however, the "factual content, so taken, 'allows the court to draw the reasonable inference that the defendant is

Civil No. 14-1622 (GAG)

liable for the misconduct alleged,' the claim has facial plausibility." Ocasio-Hernández, 640 F.3d at 12 (quoting Iqbal, 556 U.S. at 678).

     B.   Discussion

        i.  *ADA Claim Against Individuals, Retaliation Claim, and ADEA Claim.*

At the outset, after reviewing the amended complaint, pertinent law, and taking into consideration that Plaintiff has conceded that he fails to state a claim upon which relief can be granted for the following claims, the court **DISMISSES**: (1) the ADA claim against Fuentes in his individual capacity; (2) any retaliation claim under the ADA; and (3) all claims brought under the ADEA.

However, the court denies Plaintiff's request that said claims be dismissed without prejudice. The court has the discretion to decide whether to grant a motion for voluntary dismissal with or without prejudice. See Puerto Rico Maritime Shipping Authority v. Leith, 668 F.2d 46, 49 (1st Cir. 1981). The basic purpose of Rule 41(a)(2) of the Federal Rules of Civil Procedure is to freely permit the plaintiff, with court approval, to voluntarily dismiss an action without prejudice as long as no other party will be prejudiced. Gonzalez v. Santiago, Inc., 141 F. Supp. 2d 202, 205 (D.P.R. 2001). Courts in this district have held that legal prejudice occurs if a defendant is voluntarily dismissed when he is entitled to a final judgment of dismissal with prejudice on a summary judgment motion. See id.; Molina-Olivo v. Experience Works, Inc., No. 09-1331, 2009 WL 1767552, at *2 (D.P.R. June 17, 2009). The court finds that this reasoning logically applies to motions to dismiss pursuant to Rule 12(b)(6) as well because they are also dispositive motions.

Defendants are entitled to dismissal with prejudice on these claims for the following reasons. First, it is well-settled that Title I of the ADA does not apply to employees in their

Civil No. 14-1622 (GAG)

individual capacity; thus, Plaintiff's claim against Fuentes in his individual capacity fails as a matter of law.  See Roman-Oliveras v. Puerto Rico Elec. Power Auth., 655 F.3d 43, 52 (1st Cir. 2011).  Second, other than marking retaliation on his Charge of Discrimination form with the EEOC, Plaintiff does not allege any facts or legal assertions regarding such a claim, and, as such, fails to properly plead this claim.  Lastly, Plaintiff fails to allege any facts whatsoever that relate to his age or any discrimination by Defendants because of his age and thus he has alleged, but not shown, that he is entitled to relief.  See Jorge v. Rumsfeld, 404 F.3d 556, 561 (1st Cir. 2005) (articulating requirements of an ADEA claim).

Accordingly, because Defendants are entitled to final judgment of dismissal with prejudice on their 12(b)(6) motion, the court **DISMISSES** the aforementioned claims **with prejudice.**

ii.  *Civil Rights Claim Pursuant to 42 U.S.C. § 1983.*

The court next addresses Defendants' motion to dismiss Plaintiff's civil rights claim brought pursuant to § 1983 of the Civil Rights Act of 1991.  The court addresses this claim separately and in greater detail simply because, even though Plaintiff asks this court for permission to voluntarily dismiss this claim, he states that he concedes that said claim *may* be time-barred, but fails to provide any further explanation.  (Docket No. 41 at 3.)

In civil rights actions brought pursuant to 42 U.S.C. § 1983, the court applies the forum state's statute of limitations period for personal injury actions, which in Puerto Rico is one year.  Ruiz-Sulsona v. Univ. of Puerto Rico, 334 F.3d 157, 159 (1st Cir. 2003).  Federal law is then applied to determine when the limitations period begins to accrue, which, in most instances, occurs "when the plaintiff knows, or has reason to know, of the injury on which the action is based."  Id.  In wrongful discharge suits, like the present case, "the statute of limitations begins to run when the

Civil No. 14-1622 (GAG)

plaintiff learns of the decision to terminate his employment." Id. Furthermore, "the Supreme Court of Puerto Rico has ruled that the filing of an administrative complaint will not toll the running statute of limitations for tort actions nor violations of constitutional rights, provided that an administrative agency, such as the . . . EEOC, does not possess jurisdiction over such matters." Sanchez Ramos v. Puerto Rico Police Dept., 392 F. Supp. 2d 167, 181 (D.P.R. 2005) (quoting Cintron v. E.L.A., 127 P.R. Dec. 582, 595 (1990)); see Leon-Nogueras v. Univ. of Puerto Rico, 964 F. Supp. 585, 589 (D.P.R. 1997) (holding that the filing of an administrative charge could not toll a § 1983 cause of action for an alleged violation of constitutional rights because neither the EEOC or Puerto Rico Anti-Discrimination Unit have jurisdiction over such claims).

Here, Plaintiff alleges that he was terminated on March 1, 2013. (Docket No. 26 ¶¶ 24-25.) That same day, he filed a charge of discrimination with the EEOC, which evidences that he learned of the decision to terminate his employment then. (Id. ¶ 33.) Moreover, Plaintiff fails to allege that he sought relief from and/or received a right to sue letter from the Department of Justice regarding his constitutional claim. Therefore, Plaintiff had until March, 2014 to file the present lawsuit. However, Plaintiff filed this suit in August, 2014—almost a half year after the limitations period had ran. Accordingly, Plaintiff's § 1983 claim is time-barred and is **DISMISSED** with prejudice, as opposed to without prejudice.

iii.   *ADA Claim Against the Board and Fuentes in his Official Capacity.*

In moving to dismiss Plaintiff's ADA claim against the Board and Fuentes in his official capacity, Defendants contend that because Plaintiff did not indicate which title of the ADA he relies upon in asserting his claim, they assume that it must be Title I, which is not applicable in this case due to Eleventh Amendment sovereign immunity. (Docket No. 31 at 12-16.) Plaintiff's

Civil No. 14-1622 (GAG)

response emphasizes that although he cited the ADA in its entirety ("42 U.S.C. 12101 *et seq.*"), he

included the language of Title II when he articulated the legal grounds for his allegations.  (Docket

No. 41 at 6-7.)  As such, Plaintiff argues, by merely citing a regulation from the Department of

Justice, that he brings his ADA claim under Title II.  (Id. at 7.)

Title II of the ADA was enacted "to prohibit 'discrimination by governmental entities in

the operation of public services, programs, and activities.'"  Rivera–Concepcion v. Puerto Rico,

786 F. Supp. 2d 489, 497 (D.P.R. 2011) (citing Toledo v. Sanchez, 454 F.3d 24, 30 (1st Cir. 2006);

42 U.S.C. § 12132).  It provides that "no qualified individual with a disability shall, by reason of

such disability, be excluded from participation in or be denied the benefits of the services,

programs, or activities of a public entity, or be subjected to discrimination by any such entity."  42

U.S.C. § 12132.  To state a claim for a violation of Title II, a plaintiff must allege that: (1) he is a

qualified individual with a disability; (2) he was either excluded from participation in or denied the

benefits of some public entity's services, programs, or activities, or was otherwise discriminated

against; and (3) that such exclusion, denial, or discrimination was by reason of his disability.

Toledo, 454 F.3d at 31 (citing Parker v. Univ. de Puerto Rico, 225 F.3d 1, 4 (1st Cir. 2000)); see

also Toledo-Colon v. Puerto Rico, 812 F. Supp. 2d 110, 122-23 (D.P.R. 2011).  Furthermore, the

Department of Justice has promulgated a regulation for Title II, which interprets Title II to hold

that "[n]o qualified individual with a disability shall, on the basis of disability, be subjected to

discrimination in employment under any service, program, or activity conducted by a public

entity."  28 C.F.R. § 35.140(a).

Turning to the present case, the court notes that Defendants are correct that the Eleventh

Amendment bars private suits seeking monetary damages for state violations of Title I of the

Civil No. 14-1622 (GAG)

ADA.  See Tennessee v. Lane, 541 U.S. 509, 514 (2004).  However, it is clear by the language used in Plaintiff's amended complaint that he is grounding his ADA claim in Title II of that Act, as opposed to Title I.  (See Docket No. 26 ¶ 1 (noting that the ADA "prohibits public entities from denying services or benefits to otherwise qualified employees with disabilities on the basis of those disabilities, and obliges equal opportunity for people with disabilities to access, participate in and benefit from a public entity's aids, benefits, and services.")).  To the extent that Defendants might argue that Plaintiff must cite the exact section of the ADA, the court reminds them that all reasonable inferences must be drawn in favor of Plaintiff and the court must liberally read the complaint.  See Rodríguez-Reyes v. Molina-Rodríguez, 711 F.3d 49, 55 (1st Cir. 2013).

Moreover, although Defendants do not argue to the contrary, Plaintiff's claim appears to sufficiently allege that he was a qualified individual with a disability that substantially limits a major life activity, that being Parkinson's disease (Docket No. 26 ¶¶ 23-29), that he was discriminated against by being terminated from his position (Id. ¶ 25), and that he was terminated by reason of his disability.  (Id. ¶¶ 22-24, 29-30).  Furthermore, it is not disputed that the Board is an arm of the Puerto Rico government, and thus a public entity.  See 42 U.S.C. § 12131(1) (defining public entity to include "any department, agency, . . . or other instrumentality of a State").

However, Plaintiff fails to mention that whether Title II encompasses employment practices—that is, whether public employees can sue public entities for employment discrimination—is not well-settled law.  The Circuit Courts that have considered this question are split.  See Brumfield v. City of Chicago, 735 F.3d 619, 627 (7th Cir. 2013) (no cognizable employment discrimination claim under Title II); Elwell v. Oklahoma ex rel. Bd. of Regents of

Civil No. 14-1622 (GAG)

*Univ. of Oklahoma*, 693 F.3d 1303, 1314 (10th Cir. 2012) (not cognizable); *Zimmerman v. Or. Dep't of Justice*, 170 F.3d 1169, 1173-74 (9th Cir. 1999) (not cognizable), cert. denied, 531 U.S. 1189 (2001); *Bledsoe v. Palm Beach County Soil & Water Conservation Dist.*, 133 F.3d 816, 820-22 (11th Cir. 1998) (cognizable).  Additionally, the District Courts within our Circuit that have addressed this issue are also split in their interpretation of Title II.  *See Skinner v. Salem School Dist.*, 718 F. Supp. 2d 186, 188 (N.H. 2010) (cognizable); *Downs v. Mass. Bay Transp. Auth.*, 13 F. Supp. 2d 130, 134-36 (D. Mass. 1998) (cognizable); *Motzkin v. Trs. of Boston Univ.*, 938 F. Supp. 983, 996 (D. Mass. 1996) (not cognizable).  The courts that hold that Title II encompasses employment practices look to (1) the legislative history of Title II, which notably references § 504 of the Rehabilitation Act as a model for Title II (an act that is unquestionably intended to include employment discrimination), and (2) the Department of Justice's implementing regulation that expressly states that Title II covers employment practices.  *See, e.g., Bledsoe*, 133 F.3d at 821-22 (extensively analyzing the legislative history of Title II and noting that Congress contemplated a coordinated interpretation of Title II and § 504 of the Rehabilitation Act because language in § 504 very similar to that of 42 U.S.C. § 12132); *Downs*, 13 F. Supp. 2d at 134-36 (same); *see also* 28 C.F.R. § 35.140(a).  These courts delve into extrinsic sources to interpret the statute because they hold that the catch-all phrase at the end of 42 U.S.C. § 12132—"or be subjected to discrimination by any such entity"—is unclear as to whether this encompasses employment discrimination.  *See Bledsoe*, 133 F.3d at 821-22; *Downs*, 13 F. Supp. 2d at 134-36.

The courts that have rejected the aforementioned interpretation have reasoned that (1) Title II's phrase "services, programs, and activities" clearly and unambiguously refers only to "outputs" of a public entity and not "inputs" such as employment and (2) Title II says nothing about

13

Civil No. 14-1622 (GAG)

employment, whereas Title I expressly does.  See, e.g., Brumfield, 735 F.3d at 626; Zimmerman, 170 F.3d at 1174; Motzkin, 938 F. Supp. at 996; see also Bd. of Trustees of Univ. of Alabama v. Garrett, 531 U.S. 356, 360 n.1 (2001) (declining to address whether Title II of the ADA is available for claims of employment discrimination when Title I of the ADA expressly deals with that subject, but citing case holding that "where Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion" (citing Russello v. United States, 464 U.S. 16, 23 (1983)).

Moreover, the First Circuit, while ultimately staying the case on abstention grounds, has addressed this issue in dicta.  See Currie v. Grp. Ins. Comm'n, 290 F.3d 1, 6-7 (1st Cir. 2002).  In Currie, the court stated:

> The answer is not so plain.  While Title I's language clearly covers employment discrimination, and public employers are not exempted from the definition of a covered entity, Title I says nothing about it being an exclusive remedy or avenue for suit.  42 U.S.C. § 12112.  It is not unheard of for individuals to have overlapping rights, even within one Act.  Here, the two Titles grant substantively different rights—for instance, while Title I gives successful plaintiffs the opportunity to obtain compensatory and punitive damages, there is no such right under Title II.  Id. § 12133 (referencing 29 U.S.C. § 794a).  Nor is the language of Title II clear on this question.  The words "public services, programs, or activities" do not necessarily exclude employment, and the "subjected to discrimination" clause may broaden the scope of coverage further.  Moreover, the Department of Justice has promulgated a regulation stating that Title II does cover employment practices.  28 C.F.R. § 35.140 (2001); see also 28 C.F.R. pt. 35, App. A (2001) (elaborating on § 35.140).  This regulation is entitled to deference under the *Chevron* doctrine if the statutory language is unclear.  Chevron U.S.A., Inc. v. Natural Res. Def. Council, Inc., 467 U.S. 837, 842-43, 104 S. Ct. 2778, 81 L. Ed. 2d 694 (1984).  In addition, Currie cites to legislative history which she says demonstrates that Congress intended Title II to cover employment and to function in the same manner as Section 504 of the Rehabilitation Act

14

Civil No. 14-1622 (GAG)

<u>Currie</u>, 290 F.3d at 6-7.   Therefore, while not holding that Title II encompasses employment practices, the First Circuit has clearly stated that "the language of Title II [is not] clear on this question" and also appears to have suggested that Title II could be construed to encompass employment.  <u>See id.</u> at 7; <u>see also</u> <u>Skinner</u>, 718 F. Supp. 2d at 192.  As such, when the language of a statute is unclear and ambiguous, the implementing agency's regulation is entitled to deference under the <u>Chevron</u> doctrine.  <u>See</u> <u>Chevron U.S.A., Inc.</u>, 467 U.S. at 842-43 (requiring deference to implementing agency where it reasonably resolves a statutory ambiguity).  And, as noted above, the Department of Justice has specifically stated that "[n]o qualified individual with a disability shall, on the basis of disability, be subjected to **discrimination in employment** under any service, program, or activity conducted by a public entity."  28 C.F.R. § 35.140(a) (emphasis added).  Indeed, a sister District Court recently followed this very reasoning.  <u>See</u> <u>Skinner</u>, 718 F. Supp. 2d at 192.

In light of the aforementioned case law and First Circuit reasoning, this court holds that because the Department of Justice's interpretation of Title II reasonably resolves the ambiguity in the language of Title II of the ADA, it is entitled to deference under the <u>Chevron</u> doctrine.  When that deference is accorded, Title II of the ADA authorizes employment discrimination claims against public entities.  <u>See id.</u>; <u>Currie</u>, 290 F.3d at 7.  Furthermore, the court notes that it also reaches this result and applies an expansive interpretation of Title II of the ADA in light of its broad remedial purpose.  <u>See</u> <u>Dudley v. Hannaford Bros. Co.</u>, 333 F.3d 299, 307 (1st Cir. 2003) ("Given the remedial purpose underlying the ADA, courts should resolve doubts about such questions in favor of disabled individuals."); <u>Arnold v. United Parcel Serv., Inc.</u>, 136 F.3d 854, 861 (1st Cir. 1998) ("The ADA is a 'broad remedial statute.'")

**Civil No. 14-1622 (GAG)**

All this being said, there are still two remaining issues in this case that will need to be addressed going forward.  The first issue is that Plaintiff must still prove that state sovereign immunity is not a defense to an action under Title II, as this is determined on a claim-by-claim basis.  See Toledo, 454 F.3d at 31-32.  However, the determination of this issue appears to be destined for summary judgment.[1]  The second issue involves Plaintiff's request for compensatory and punitive damages as a remedy for his Title II claim.  To start, punitive damages are clearly not available for a Title II claim, and, as such, Plaintiff is barred from seeking such.  See Nieves-Marquez v. Puerto Rico, 353 F.3d 108, 126 (1st Cir. 2003).  Further, private individuals may claim compensatory damages under Title II only for intentional discrimination.  See id.  Although the issue of whether damages can be awarded for emotional injury under Title II has been a topic of considerable debate, "the First Circuit has acknowledged, without expressly holding, that damages for emotional injury could be available in situations where economic harm is not present if there exists a sign of actual animus towards the disabled."  Vazquez v. Municipality of Juncos, 756 F. Supp. 2d 154, 167 (D.P.R. 2010) (citing Schultz v. Young Men's Christian Ass'n of U.S., 139 F.3d 286, 290-91 (1st Cir. 1998)).  At this stage in the litigation, Plaintiff has sufficiently plead that Defendants intentionally discriminated against him by firing him due to his disability.  Whether Defendants' actions were motivated by animus towards the disabled is an issue that will need to be addressed on summary judgment.

---

[1] To decide whether a particular plaintiff can sue a governmental entity for damages for purposes of the Eleventh Amendment to the United States Constitution, the court must determine on a claim-by-claim basis, "(1) which aspects of the state's alleged conduct violated Title II; (2) to what extent such misconduct also violated the Fourteenth Amendment; and (3) insofar as such misconduct violated Title II but did not violate the Fourteenth Amendment, whether Congress's purported abrogation of sovereign immunity as to that class of conduct is nevertheless valid."  Toledo, 454 F.3d at 31 (quoting United States v. Georgia, 546 U.S. 151, 159 (2006)).

Civil No. 14-1622 (GAG)

In light of the aforementioned discussion, the court hereby **DENIES** Defendants' motion to dismiss Plaintiff's ADA claim against the Board and Fuentes in his official capacity.

>                    iv.   *Puerto Rico Law Claim.*

Lastly, the court addresses Plaintiff's supplemental law claim against Defendants brought under Law 44 and Law 100.  As noted above, Defendants argue that said claims are barred by the Eleventh Amendment and also time-barred, and, as such, must be dismissed.  (Docket No. 31 at 23-26.)  Plaintiff responds by asking this court for a dismissal without prejudice, conceding that such claim *may* be barred by the Eleventh Amendment but is not time-barred.  (Docket No. 41 at 7-8.)

Law 44 "is Puerto Rico's counterpart to the ADA."  Salgado-Candelario v. Ericsson Caribbean, Inc., 614 F. Supp. 2d 151, 175 (D.P.R. 2008); Vazquez v. Municipality of Juncos, 756 F. Supp. 2d 154, 166 (D.P.R. 2010).  It prohibits discrimination against "persons with any kind of physical, mental or sensory disability" by any public or private institution in Puerto Rico, P.R. LAWS ANN., tit. 1, § 504, and "was intended to harmonize Puerto Rico law with the federal statutory provisions of the ADA."  Torres-Alman v. Verizon Wireless Puerto Rico, Inc., 522 F. Supp. 2d 367, 401 (D.P.R. 2007).  The elements of proof for a claim under Law 44 are essentially the same as those for establishing a claim under the ADA, Salgado-Candelario, 614 F. Supp. 2d at 175, and, as such, the courts in this district have consistently held that there is no individual liability under Law 44.  See Cardona Roman v. Univ. of Puerto Rico, 799 F. Supp. 2d 120, 131-32 (D.P.R. 2011); Vázquez Vázquez v. Checkpoint Sys. of Puerto Rico, Inc., 609 F. Supp. 2d 217, 220 (D.P.R. 2009).  Moreover, the doubling of damages that is part of the remedy set forth in Law

Civil No. 14-1622 (GAG)

100 was adopted as a remedy available for claims related to violations of Law 44.  See P.R. LAWS ANN. tit 1 § 511; Rivera Flores v. Cia ABC, 138 P.R. Dec. 1, P.R. Offic. Trans. (1995).

The court first briefly addresses Defendants' Eleventh Amendment sovereign immunity argument.  "A [S]tate's consent to suit in the federal courts must be unequivocally expressed. . . . It must be stated by the most express language or by such overwhelming implications from the text as [will] leave no room for any other reasonable construction. . . .  Furthermore, in order for a state statute or constitutional provision to constitute a waiver of Eleventh Amendment immunity, it must specify the state's intention to subject itself to suit in *federal court*."  Acevedo Lopez v. Police Dep't of Com. of Puerto Rico, 247 F.3d 26, 28 (1st Cir. 2001) (citations and internal quotation marks omitted; emphasis in original).  "Puerto Rico, despite the lack of formal statehood, enjoys the shelter of the Eleventh Amendment in all respects."  Id.  Further, it is not disputed that the Board is an arm of the Puerto Rico government, and thus a public entity.  See 42 U.S.C. § 12131(1) (defining public entity to include "any department, agency, . . . or other instrumentality of a State").  Notably, the First Circuit has held that the Commonwealth of Puerto Rico has not waived its Eleventh Amendment sovereign immunity under Law 44 because there is no specific language in the statute indicating that Puerto Rico intended to make itself subject to damages in federal court for disability-based employment discrimination.  Id. at 29.  Therefore, it is clear that Puerto Rico has not consented to be sued in this court for violations of Law 44.  At this juncture, the court would typically dismiss this claim without prejudice so that it may be brought in the Court of First Instance.  However, the court must first address Defendants' statute of limitations argument to determine if said claim can nevertheless be brought in Commonwealth court.

Civil No. 14-1622 (GAG)

The Puerto Rico Supreme Court has held that "the filing of a Title VII claim with the EEOC not only tolls but also suspends the running of the statute of limitations for claims under Law 100 arising out of the same incidents. . . .  The Supreme Court reasoned that the federal legal framework for simultaneously administering claims under Title VII and state anti-discrimination laws presented a special situation that required that Court adopt federal tolling rules for Puerto Rico law-based claims."  Leon-Nogueras v. Univ. of Puerto Rico, 964 F. Supp. 585, 588 (D.P.R. 1997) (citing Matos Molero v. Roche Products, Inc., 132 P.R. Dec. 470 (1993)); see Rodriguez-Torres v. Caribbean Forms Mfr., Inc., 399 F.3d 52, 61 (1st Cir. 2005) ("By filing a charge with the EEOC or the Department of Labor and notifying the employer of the charge, an employee can stop the running of the limitations period [for a Law 100 claim] until the administrative proceeding has concluded.").  Courts have applied the Puerto Rico Supreme Court's reasoning in Matos Molero to find that the limitations period is also tolled for violations of Laws 17 and 69 when an administrative complaint is filed with the EEOC for federal claims, even though the Puerto Rico Supreme Court has not expressly held as such for those specific laws.  See Rodriguez-Torres, 399 F.3d at 61; Leon-Nogueras, 964 F. Supp. at 588.  Further, the Puerto Rico Supreme Court has recognized the interrelationship between ADA and Law 44 claims and noted that although plaintiffs need not exhaust administrative remedies under Law 44, they can file said claims along with their ADA claims upon receiving the right to sue letter.  See Rivera Flores v. Cia ABC, 138 P.R. Dec. 1, P.R. Offic. Trans. (1995).

Plaintiff alleges that he was terminated because of his disability on March 1, 2013. (Docket No. 26 ¶¶ 22-24.)  That same day, Plaintiff filed a charge of discrimination with the EEOC.  (Id. ¶¶ 9, 33.)  Thereafter, Plaintiff received the Notice of the Right to Sue by the EEOC

Civil No. 14-1622 (GAG)

and United States Department of Justice on August 28, 2014.  (Id. ¶ 36.)  On December 8, 2014, Plaintiff amended his complaint, which added his claim under Laws 44 and 100.  (Id. ¶ 5.)  As such, if the tolling rule applies, Plaintiff's Law 44 and Law 100 claim would be timely.  The court finds that the tolling rule does indeed apply to Law 44 because both Law 44 and Law 100 serve the purpose of combating discrimination in the employment context.  Further, in promulgating Law 44, the Puerto Rico Legislature incorporated into said statute the remedies, powers, and procedures established in Law 100.  See P.R. LAWS ANN. tit 1 § 511.  Therefore, the court is confident that the Puerto Rico Supreme Court would apply the tolling rules from Law 100 to a Law 44 claim.  Accordingly, the court finds that Plaintiff's filing of his charge of discrimination with the EEOC tolled the running of the statute of limitations for his claim under Laws 44 and 100.  Plaintiff's Puerto Rico Law claim is thus not time-barred.  Nevertheless, the court hereby **DISMISSES** said claim **without prejudice** because the Commonwealth of Puerto Rico has not waived its Eleventh Amendment sovereign immunity under Law 44.  Plaintiff may re-file this claim in the Court of First Instance.

Therefore, the court **DENIES** Defendants' motion to dismiss Plaintiff's Puerto Rico Law claim.

**IV.    Conclusion**

In sum, the court **DENIES** Defendants' motion to dismiss this case due to Plaintiff's insufficient service of process and orders Plaintiff to re-serve Defendants by **March 24, 2015**.  The court also **DENIES** Defendants' motion to dismiss Plaintiff's ADA claim against the Board and Fuentes in his official capacity.  Moreover, the court **GRANTS** Defendants' motion to dismiss the following claims: (1) the ADA claim against Fuentes in his individual capacity; (2) any retaliation

20

**Civil No. 14-1622 (GAG)**

claim under the ADA; (3) all claims brought under the ADEA; and (4) the § 1983 civil rights claim.   As such, the court **DISMISSES** those claims **with prejudice.**   Lastly, the court grants Defendants' motion to dismiss Plaintiff's supplemental law claim but **DISMISSES** this claim **without prejudice**.

     **SO ORDERED.**

In San Juan, Puerto Rico this 10th day of March, 2015.

       *s/ Gustavo A. Gelpí*
       GUSTAVO A. GELPI
       United States District Judge