**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF PUERTO RICO**

**JOSE BLANCO-TORRES,**

**Plaintiff,**

**v.**                                              **CIVIL NO. 14-1622 (GAG)**

**ROBERTO FUENTES-MALDONADO,**
**et al.,**

**Defendants.**

**OPINION AND ORDER**

Presently before the Court is Defendant Junta de Gobierno del Servicio de Emergencia 9-1-1 ("Defendant") motion for summary judgment (Docket No. 106), Plaintiff José Blanco-Torres' ("Plaintiff") opposition (Docket No. 154), Defendant's reply (Docket No. 159) and Plaintiff's sur-reply (Docket No. 160). After reviewing the filings and the applicable law, Plaintiff's motion for summary judgment is **GRANTED**.

**I.     Relevant Factual and Procedural Background**

On August 12, 2014, Plaintiff brought this action against Junta de Gobierno del Servicio de Emergencia 9-1-1 and Director Roberto Fuentes-Maldonado ("Fuentes") in his official and individual capacity, alleging that he was discriminated against on the basis of his disability and age in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101 *et seq.*, the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621 *et seq.*, the Fourteenth Amendment to the United States Constitution pursuant to § 1983 of the Civil Rights Act of 1991; Puerto Rico Law No. 44 of July 2, 1985, P.R. Laws Ann. tit. 1, §§ 501 *et seq.* ("Law 44"), and Law No. 100 of June 1959, P.R. Laws Ann. tit. 29, §§ 146 *et seq.* (Docket No. 26.) Plaintiff

claimed that the defendants unlawfully and unconstitutionally discriminated against him by terminating his employment due to his disability stemming from his Parkinson's disease. Id.

At the motion-to-dismiss stage, the Court dismissed all claims (see Docket No. 43), except Plaintiff's ADA claim against Defendant and Fuentes in his official capacity.[1] Defendant now moves the Court for summary judgment arguing that "(1) Plaintiff's allegations were actually based on Title I of the ADA, for which Defendant enjoys Sovereign Immunity as to monetary damages; (2) even taking the instant case as a Title II action, defendant would still be entitled to Sovereign Immunity; (3) in any event, defendant's dismissal from employment was not by reason of Plaintiff's disability, but because the legal advisor position he held was a confidential, policymaking position; and (4) Plaintiff's complaint under Title II of ADA is time-barred by the applicable statute of limitations." (Docket No. 106, p. 3-4.) Plaintiff opposed Defendant's motion on August 15, 2016. (Docket No. 154.) The relevant uncontested facts, in the light most favorable to Plaintiff, follows.

Plaintiff, an attorney since 1979, is affiliated to the New Progressive Party ("NPP"). (Statement of Uncontested Facts ("SUF"), Docket No. 107, ¶¶ 3, 14.) In January 2009, following the results of the prior November elections, the NPP assumed power and Plaintiff obtained a service contract with Defendant. (SUF ¶ 11.) Plaintiff had contracted with Defendant during previous NPP administrations, but never during Popular Democratic Party administrations ("PDP"). (SUF ¶¶ 7-10.) On March 10, 2011, Plaintiff was appointed as Defendant's legal advisor, a position classified as "confidential" in accordance with the Public Service Human Resources Administration Act of Puerto Rico, P.R. Laws Ann. tit. 3, §§ 1461, 1465. (SUF ¶¶ 13,

---

[1] The State is the real party in interest for a claim against an individual defendant in his official capacity. See Kiman v. N.H. Dep't of Corr., 451 F.3d 274, 291 n.18 (1st Cir. 2006).

16; Docket Nos. 112-1, 112-2.) The job description for the legal advisor position stated that the holder of the position would provide direct legal advice to Defendant's Executive Director, and would actively participate, along with the Executive Director, in the formulation of public policy. (SUF ¶¶ 19, 22.)

In January 2012, following another general election, the PDP assumed power, and on March 1, 2013, José Antonio Vera-Torres ("Vera") was appointed Director of Human Resources of the Board. (SUF ¶ 28.) Vera notified all confidential employees that the newly appointed Executive Director, Fuentes, would begin working on March 1, 2013 and that they should have "all the necessary documentation ready for the transition, including their resignation letters." (SUF 29; Docket No. 107-8, ¶ 3.) Plaintiff, however, was not at the meeting. (SUF ¶ 34.)

The parties dispute whether Plaintiff informed Vera that he suffered from Parkinson's disease. (SUF ¶ 31; Opposition to Statement of Uncontested Facts ("OSUF"), Docket No. 155, ¶ 8; Docket Nos. 155-1, p. 114 and 107-1, p. 114.) The parties also dispute whether Vera discussed Plaintiff's health in a meeting with an auditor and another person named Janet Jeremias. (SUF ¶ 38; OSUF ¶ 9; Docket Nos. 107-8, ¶ 11 and Docket No. 155-1, p. 120). It is uncontested, however, that Fuentes did not participate in the meeting, had no knowledge of the alleged meeting, and never met or talked to Plaintiff. (SUF ¶¶ 39, 51-54, 58.) Furthermore, it is uncontested that Vera never told Fuentes that Plaintiff "had any condition, illness or disability[,]" and that Fuentes was not aware that Plaintiff had any medical condition or disability. (SUF ¶ 56-57.)

All confidential employees submitted their resignation letters on February 28, 2013, except Plaintiff and Luis Ocasio-Vélez ("Ocasio"), who held a confidential position as Special Assistant I. (SUF ¶ 40.) On March 1, 2013, Vera notified Fuentes that Plaintiff and Ocasio had not tendered resignation letters. (SUF ¶ 41.) Plaintiff was terminated by Fuentes on March 1, 2013, the same

day that Fuentes took office as Executive Director of the Board.  (SUF ¶¶ 44, 46.)  Fuentes also terminated Ocasio.  (SUF ¶ 48.)

## II. Standard of Review

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); see FED. R. CIV. P. 56(a).  "An issue is genuine if 'it may reasonably be resolved in favor of either party' at trial, . . . and material if it 'possess[es] the capacity to sway the outcome of the litigation under the applicable law.'" Iverson v. City of Boston, 452 F.3d 94, 98 (1st Cir. 2006) (alteration in original) (internal citations omitted).  The moving party bears the initial burden of demonstrating the lack of evidence to support the non-moving party's case. Celotex, 477 U.S. at 325.  The burden then shifts to the nonmovant to establish the existence of at least one fact issue which is both genuine and material." Maldonado-Denis v. Castillo-Rodriguez, 23 F.3d 576, 581 (1st Cir. 1994).

The nonmovant may establish a fact is genuinely in dispute by citing particular evidence in the record or showing that either the materials cited by the movant "do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." FED. R. CIV. P. 56(c)(1)(B).  If the Court finds that some genuine factual issue remains, the resolution of which could affect the outcome of the case, then the Court must deny summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

When considering a motion for summary judgment, the Court must view the evidence in the light most favorable to the nonmoving party and give that party the benefit of any and all reasonable inferences. Id. at 255.  The Court does not make credibility determinations or weigh

the evidence. Id. Summary judgment may be appropriate, however, if the nonmoving party's case rests merely upon "conclusory allegations, improbable inferences, and unsupported speculation." Forestier Fradera v. Municipality of Mayagüez, 440 F.3d 17, 21 (1st Cir. 2006) (quoting Benoit v. Tech. Mfg. Corp., 331 F.3d 166, 173 (1st Cir. 2003)).

**III.     Applicable Law and Analysis**

*A.  Whether Plaintiff has a claim under Title II of ADA*

The Court rejected Defendant's contention that the allegations in the complaint fail to state a claim under Title II of ADA in ruling on the defendants' motion to dismiss. (See Docket No. 43.) The Court previously concluded that "it is clear by the language used in Plaintiff's amended complaint that he is grounding his ADA claim in Title II of the Act, as opposed to Title I." (Docket No. 43, p. 12.) Since Defendant raises no arguments to persuade the Court that its initial ruling was incorrect, Defendant's request on this ground is **DENIED**.

*B.  Whether Defendant is entitled to Sovereign Immunity under Title II of the ADA*

In ruling on Defendant's motion to dismiss, the Court held that "because the Department of Justice's interpretation of Title II reasonably resolves the ambiguity in the language of Title II of the ADA, it is entitled to deference under the Chevron doctrine [and w]hen that deference is accorded, Title II of the ADA authorizes employment discrimination claims against public entities." (Docket No. 43, p. 15; Blanco-Torres v. Junta de Gobierno del Servicio de Emergencia, 91 F. Supp. 3d 243, 254 (2015)). The Court, however, left for the summary judgment stage, whether Defendant is entitled to Sovereign Immunity under Title II of the ADA.

The Supreme Court "has declined to state definitively whether the Eleventh Amendment is a doctrine of subject matter jurisdiction." Brait Builders Corp. v. Mass., Div. of Capital Asset Mgmt., 644 F.3d 5, 10 (1st Cir. 2011) (quoting Hudson Sav. Bank v. Austin, 479 F.3d 102, 109

(1st Cir. 2007)); see also Charles Alan Wright et al., Federal Practice & Procedure: Jurisdiction and Related Matters § 3524.1 (3d ed.). It has stated, however, that it "is *jurisdictional* in the sense that it is a limitation on the federal court's judicial power." Brait Builders Corp., 644 F.3d at 10 (quoting Calderón v. Ashmus, 523 U.S. 740, 745 n.2 (1998)) (emphasis in original). The Supreme Court "has also 'recognized that [the Eleventh Amendment] is not co-extensive with the limitations on judicial power in Article III.'" Id. (quoting Calderón, 523 U.S. at 745 n.2)

Therefore, although courts must generally adjudicate plausible challenges to their jurisdiction prior to deciding the merits of a case, it is well-established under First Circuit precedent that federal courts may resolve a case on the merits in favor of a state without first resolving any Eleventh Amendment issues the state may raise. Brait Builders Corp. v. Massachusetts, Div. of Capital Asset Management, 644 F.3d 5, 10-11 (1st Cir. 2011). Accordingly, the Court will bypass this issue and evaluate Defendant's next contention, which touches upon the merits of Plaintiff's claim.

*C. The alleged discrimination under Title II of the ADA*

Title II provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. Thus, in order to state a claim for a violation of Title II of the ADA, Plaintiff must show that: (1) he is a qualified individual with a disability; (2) he was either excluded from participation in or denied the benefits of some public entity's services, programs, or activities or was otherwise discriminated against; and (3) that such exclusion, denial of benefits or discrimination was by reason of his disability. Toledo v. Sánchez, 454 F.3d 24, 31-32 (1st Cir. 2006) (citing Parker v. U.P.R., 225 F.3d 1, 4 (1st Cir. 2000)).

When the defendant's intent is at issue and the plaintiff has offered no direct evidence of discrimination, the *McDonnell Douglas* burden-shifting framework applies. See Cruz v. McAllister Bros, Inc., 52 F. Supp. 2d 269, 278 (D.P.R. 1999) (stating that the First Circuit has used *McDonnell Douglas* burden-shifting for ADA claims); see also Theriault v. Flynn, 162 F.3d 46, 55 (1st Cir. 1998) (Lipez, J., concurring). This test "is used when the plaintiff has alleged that the employer has a discriminatory animus and there is no direct evidence of such an animus." Id.

Under this framework, the plaintiff must establish a prima facie case of discrimination. Tyree v. Foxx, No. 14-2092, 2016 WL 4434387, at *3, __ F.3d __ (1st Cir. 2016). Once plaintiff has established the prima-facie case "an inference of discrimination arises, and the burden of production shifts to the defendant to produce evidence that the challenged employment action was taken for a legitimate, nondiscriminatory reason." Id. (quoting Hicks v. Johnson, 755 F.3d 738, 744 (1st Cir. 2014)); see also Gohl v. Livonia Pub. Schools School Dist., No. 15-2301, 2016 WL 4698279, __ F. 3d __ (6th Cir. 2016). If the defendant satisfies its burden, plaintiff must then "prove 'by a preponderance of the evidence that the employer's proffered reason is pretextual and that the actual reason for the adverse employment action is discriminatory.'" Tyree v. Foxx, No. 14-2092, 2016 WL 4434387, at *3 (quoting Hicks, 755 F.3d at 744)).

Here, Defendant argues that the decision to dismiss plaintiff from employment was due to the fact that the position that he held was a confidential, policymaking position, subject to selection and removal at will. (Docket No. 106, p. 23.) Plaintiff disagrees and argues that Defendant's alleged nondiscriminatory reason is a pretext for discrimination. Accordingly, the Court will assume, without deciding, that Plaintiff met his burden of proving a prima facie case of discrimination. See Gómez-González v. Rural Opportunities, Inc., 626 F.3d 654, 662 (1st Cir. 2010) (citing García v. Bristol-Myers Squibb Co., 535 F.3d 23, 31 (1st Cir. 2008)) (stating that

because the parties' primary focus is on whether defendants' ground for terminating plaintiff's employment were pretextual, it is "both expeditious and appropriate . . . to 'assume that [the plaintiff] has made out a prima facie case in order to move on to the real issues in the case.'")

At the second stage, Defendant has the burden of production –as distinguished from the burden of proof– to articulate a legitimate, nondiscriminatory reason for Plaintiff's termination. See Acevedo-Parrilla v. Novartis Ex-Lax, Inc., 696 F.3d 128, 140 (1st Cir. 2012). Defendant proffered as its nondiscriminatory reason that Plaintiff held a confidential position, subject to selection and removal at will, and that the new Executive Director requested the resignation of all persons, including Plaintiff, that held confidential positions upon assuming office under a new administration.[2] Plaintiff does not contest that Defendant provided a legitimate, nondiscriminatory justification for Plaintiff's termination.[3]

For the final stage of the burden-shifting framework, "the plaintiff 'must produce evidence to create a genuine issue of fact with respect to two points: whether the employer's articulated

---

[2] It is uncontested that Plaintiff held a trust position. (See SUF ¶¶ 13, 16; see also Docket Nos. 112-1, 112-2.) Under Puerto Rico law, "public employees are categorized into either career or trust/confidential positions." Ruiz-Casillas v. Camacho-Morales, 415 F.3d 127, 134 (1st Cir. 2005). "Unlike career employees, who are removable only for cause, [generally,] trust employees are of 'free selection and removal' . . . [they] 'do not have a constitutionally protected property interest in that position.'" Id. (quoting Galloza v. Foy, 389 F.3d 26, 34 (1st Cir. 2004)); see also Ruiz-Roche v. Lausell, 848 F.2d 5, 7 (1st Cir. 1988); P.R. Laws Ann. tit. 3, § 1465.

[3] Plaintiff argues, however, that Defendant offered different reasons for Plaintiff's termination (confidential position subject to selection and removal at will vs. perceived political affiliation) and that such inconsistencies are sufficient for the jury to conclude that the reasons it claims for its actions are false. (Docket No. 154, p. 12.)
Pretext can be established by showing "'weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons' such that a factfinder could 'infer that the employer did not act for the asserted non-discriminatory reasons.'" Santiago–Ramos v. Centennial P.R. Wireless Corp., 217 F.3d 46, 56 (1st Cir. 2000). Contrary to Plaintiff's contention, however, there was no contradiction or inconsistency on record regarding the reason proffered by Defendant for Plaintiff's termination; that is, that the "legal advisor position was a confidential position subject to selection and removal at will." (Docket No. 159, p. 9; see also Docket Nos. 112-5, 112-6.) This argument is without merit.

reason for its adverse action was a pretext and whether the real reason was . . . discrimination.'" Tyree v. Foxx, No. 14-2092, 2016 WL 4434387, at *4 (1st Cir. Aug. 22, 2016) (quoting Quiñones v. Buick, 436 F.3d 284, 289–90 (1st Cir. 2006)). "At this stage [–the summary judgment stage–] '. . . is insufficient for a plaintiff merely to undermine the veracity of the employer's proffered justification.'" Id. (quoting Dichner v. Liberty Travel, 141 F.3d 24, 30 (1st Cir. 1998)). Instead, Plaintiff "must muster proof that enables a factfinder rationally to conclude that the stated reason behind the adverse employment decision is not only a sham, but a sham intended to cover up the proscribed type of discrimination." Id. (quoting Quiñones, 436 F.3d at 289-90).

Plaintiff asserts material issues of fact as to whether (1) Plaintiff personally informed Vera that he suffered from Parkinson's disease, (SUF ¶ 31; OSUF ¶ 8; see also Docket No. 154, p. 14), and (2) whether Vera talked about Plaintiff's health in a meeting with an auditor and Janet Jeremias (SUF ¶ 38; OSUF ¶ 9; Docket No. 154, p. 14.) But this is not sufficient evidence of pretext and of discriminatory animus. Although Vera was the Director of Human Resources, it is uncontested that the Executive Director had never met Plaintiff and had no knowledge about Plaintiff's disease. Moreover, even if indeed Vera spoke at a meeting (where the Executive Director was not present) about Plaintiff's health condition, there is no evidence as to what was said about Plaintiff's condition. The evidence is thus vague, lacking in specifics and context. This evidence, standing alone, does not satisfy Plaintiff's burden of proof as to the third prong of the burden shifting analysis. The evidence in the record, evaluated in the light most favorable to Plaintiff, simply cannot be considered as *minimally sufficient evidence* from which a jury could infer that the proffered reason for firing the employee was pretextual, and that the decision was made because of discriminatory animus. See Acevedo–Parrilla, 696 F.3d at 140 (emphasis in the original) (citing Mesnick v. Gen. Elec. Co., 950 F.2d 816, 825 (1st Cir. 1991)). Accordingly, the

**Civil No. 14-1622**

motion to dismiss is **GRANTED**.  Since this conclusion is dispositive of the case, the Court need not address the statute of limitations argument.

### IV.     Conclusion

For the reasons stated above, Defendant's motion for summary judgment is **GRANTED** and the case is **DISMISSED with prejudice**.

**SO ORDERED.**

In San Juan, Puerto Rico this 29th day of September, 2016.


*s/ Gustavo A. Gelpí*
GUSTAVO A. GELPI
United States District Judge